Susan E. FRANKE, Petitioner–
Respondent,

v.

Nicholas A. FRANKE, Respondent–
Appellant.

No. 66561.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 21, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 4, 1996.

Application to Transfer Denied
Feb. 20, 1996.

Nicholas A. Franke, Los Angeles, CA, Pro Se.

Arthur H. Nissenbaum, St. Louis, for respondent.

DOWD, Judge.

Father appeals from those portions of the dissolution decree awarding Mother custody of the parties' son, child support, attorneys' fees and costs, and defining Father's visitation privileges. We affirm.

Mother and Father married on August 11, 1984, and their son, M.H.F., was born the following year. The parents separated in January of 1986. In May of 1988, following Father's graduation from law school, he moved to Los Angeles, California, to practice bankruptcy law. Mother remained in St. Louis with the minor child.

On March 15, 1991, Father filed an action for dissolution in California ("California Action"). Mother filed a similar action on July 19, 1991, in Missouri ("Missouri Action"). Mother appeared in the California Action and, through counsel, urged the court to transfer the issues regarding their son to Missouri. A default judgment was entered against Mother in the California Action on December 12, 1991. The default judgment decided, among other things, that jurisdiction over custody of and child support for the parties' son was transferred to the circuit court handling the Missouri Action.

The Missouri Action was tried on January 31, 1994, and taken under submission. Only the parties testified during the one-day bench trial. The trial court awarded primary (both legal and physical) custody of M.H.F. to Mother and temporary custody and reasonable visitation rights to Father; ordered Father to pay $1,249 per month in child support; awarded retroactive child support in the amount of $21,976.67; and required Father to pay $12,000 in attorneys' fees on behalf of Mother.[1]

Appellate review of a bench-tried matter is based upon the familiar dictates of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Furthermore, as the trier of fact, it is the duty of the trial court to decide the weight and value given to the testimony of any witness. *Wynn v. Wynn*, 738 S.W.2d 915, 918 (Mo.App.1987). On appeal, we review the evidence in favor of the decree and we defer to the trial court even if we believe the evidence could support a different conclusion. *Id.*

In his first point on appeal, Father asserts the trial court erred in awarding Mother primary custody because (1) the court failed to consider the wishes of eight-year-old M.H.F.; (2) the court improperly decided which parent would allow meaningful contact with the non-custodial parent; and (3) the court neglected to consider a joint custody arrangement as required by § 452.375.4, RSMo 1994[2]. In Missouri, child custody is determined in accordance with the best interests of the child and by considering all relevant factors, including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

---

**1.** The trial court denied Father's "Motion to Modify Order, Judgment and Decree of Custody and Child Support Pursuant to Missouri Rule of Court 75.01" because movant failed to notice up and argue the motion.

**2.** Unless otherwise indicated, all further statutory references are to RSMo 1994.

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interest;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

§ 452.375.2.

■ When determining custody of a minor child, the trial court is vested with broad discretion, and its ultimate decision shall be affirmed unless we are convinced the child's welfare requires some other disposition. *Gulley v. Gulley*, 852 S.W.2d 874, 876 (Mo. App.E.D.1993); *McDowell v. McDowell*, 670 S.W.2d 518, 521 (Mo.App.E.D.1984).

The trial court found Father had minimal contact with M.H.F. after the parties separated in 1986. Furthermore, Father, after voluntarily relocating to California in 1988, had little to no contact with the child until the present litigation began in 1991. The trial court determined it was in the best interest of the child for Mother to have primary, care, custody and control of M.H.F.

■ We find all three of Father's arguments against the trial court's award of sole custody to Mother meritless. First, Father argues in determining custody the trial court was required to consider the wishes of the parties' son, citing § 452.375.2 and *Osmun v. Osmun*, 842 S.W.2d 932, 936 (Mo.App.E.D. 1992). Father's reliance on *Osmun's* interpretation of the child custody statute is misplaced. The children whose custody was sought in *Osmun* were nineteen, fifteen, and twelve years old, respectively, and at such ages they were capable of rationally expressing a preference that would assist the court

in its determination of custody; however, at the time of trial in this matter, M.H.F. was only eight years old and at such an age, this court has consistently held it is neither error nor an abuse of discretion for a court to refuse to consider the wishes of such a young child. *Kordonowy v. Kordonowy*, 887 S.W.2d 809, 811 (Mo.App.E.D.1994) ("[I]t was not error for a court not to interview a child of tender years [9 years old] as to his preference. Such a child is too young to have a rational basis for a preference and even subjecting him to expressing a preference may have serious adverse effects.") (quotations omitted).

■ Second, Father contends the trial court improperly applied the eighth factor used in § 452.375.2 to determine the custody issue. Even if we assume that one factor, in a statute that requires a trial court to consider and balance eight factors, can be dispositive as to the other seven, we disagree with his assertion of error. Although Father testified Mother had repeatedly kept him from seeing his son by cancelling planned visits and by preventing him from picking his son up at school, Mother testified she was unable to check on M.H.F. during his 1993 Christmas visit because Father neglected to provide a correct home phone number and refused to return calls placed with his office. We find no abuse of discretion in the trial court's determination of this issue.

■ Third, Father argues the trial court misapplied the law by failing to consider a joint custody arrangement. Father's argument fails. The reviewing court is entitled to presume the trial court considered all the evidence and awarded custody in the best interest of the child. *Garcia–Otero v. Garcia–Otero*, 770 S.W.2d 486, 487 (Mo.App. 1989). No evidence before us rebuts the presumption that the trial court considered all the evidence and granted custody to Mother following the appropriate statutory framework. Point denied.

■ In his second point on appeal, Father argues the trial court erred by limiting visitation with his son to the winter holidays and six non-consecutive weeks in the summer. We disagree.

■ A determination of visitation rights will not be overturned unless the order is not in the best interests of the child. *In re Marriage of Amos*, 843 S.W.2d 946, 950 (Mo. App.S.D.1992). The visitation awarded Father was substantially similar to the time he spent with M.H.F. in the previous three years. The only difference was that the summer period was not previously split into two non-consecutive three-week periods. Under these circumstances, we find no abuse of discretion. Point denied.

■ For his third point on appeal, Father asserts multiple arguments attacking the trial court's award of both retroactive and prospective child support.[3] The trial court ordered Father to pay $1,249 per month in child support and awarded retroactive child support in the amount of $21,976.67. Initially, Father claims the trial court made insufficient findings to support a departure from the presumed child support amount,[4] and the court erroneously used the gross revenues of Father's law practice rather than his gross income to determine the amount of child support. Father then claims insufficient evidence supported the amount of the child support order,[5] the trial court failed to consider his ability to pay the amount ordered, and the retroactive award of child support was based on a misapplication of law. The trial court found Father's testimony, regarding his monthly income since the time he became self-employed, not credible and imputed $11,400 in monthly income to him. The linchpin to Father's arguments is his contention that the trial court used the gross revenues from his law practice rather than his gross income to determine the child support issues. We disagree. This court gives due regard to the trial court's determinations of credibility, Rule 73.01(c)(2), and we find no error in the trial court's ruling imputing income to Father on the issues of prospective and retroactive child support.

First, in a settlement conference order dated December 1, 1993, the trial court ordered Father to produce information on his finances that was not prepared by him. Father failed to provide either the court or Mother with any independently verifiable financial documentation. Second, Father testified he obtained a $283,000 deed of trust on a condominium without being required to complete a loan application. In direct refutation of Father's testimony, Mother entered into evidence a Uniform Residential Loan Application completed and signed by Father as a part of his application for the condominium. In the loan application, Father placed his monthly income at $11,400 and listed assets of over $54,000 not included in either his Statement of Property or Statement of Income and Expenses. Third, a Request for Verification of Employment sent by Scalero Financial Services revealed Father's office manager listed his 1992 income as $137,000 and his 1993 monthly base pay as $11,400. Fourth, the loan application revealed Father made a $31,000 cash down payment on the property. Given Father's discredited testimony and his failure to provide any independent financial data, the trial court did not abuse its discretion by imputing a monthly income of $11,400 to him. *See Dimmitt v. Dimmitt*, 849 S.W.2d 218, 221 [5] (Mo.App. S.D.1993).

■ Father cites numerous cases contending the trial court erroneously applied Rule 88.01. Since the trial court found the amount of child support at the top of the guidelines unjust and inappropriate, the next step of upwardly departing from the guidelines was a correct application of law. *Mehra v. Mehra*, 819 S.W.2d 351, 354 (Mo. banc 1991); accord *Cohen*, 884 S.W.2d at 39. Ac-

---

3. All of Father's points on appeal have been followed by several sub-points which are essentially additional points of contention. We discourage the use of sub-points. This practice rarely conforms with the dictates of *Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978), and should be avoided. *See In re Marriage of Cohen*, 884 S.W.2d 35, 37 n. 1 (Mo.App.E.D.1994).

4. Rule 88.01.

5. Father argued the trial court erred by failing to make any specific findings as to "why" the child support guidelines were unjust and inappropriate. In support of his argument, Father cites a litany of Western District cases that not only has never been followed in the Eastern District, but also has been disregarded in the Western District itself. *Scoggins v. Timmerman*, 886 S.W.2d 135, 139 (Mo.App.W.D.1994); *Cohen*, 884 S.W.2d at 38–39.

cordingly, the only way Father can argue the trial court erroneously applied Rule 88.01 is if this court agrees with his contention that the trial court's finding of the top amount of the chart as unjust and inappropriate was incorrect as a matter of law. Father's challenge to the trial court's unjust and inappropriate finding is that the court misapplied the law because it based its finding upon an erroneous imputation of $11,400 in monthly income to Father. We addressed and rejected this argument earlier, and we find it similarly unconvincing here. The trial court found Father's testimony regarding his finances not credible. Substantial evidence supported the trial court's imputing $11,400 per month in gross income to Father.

■ Finally, Father argues the trial court miscalculated Mother's income for child support purposes by $42 per month. Father claims this de minimis error by the trial court fundamentally flaws the entire child support award and argues we should reverse the entire award based upon this $42 a month error. We disagree. Even assuming the trial court erred, we find no reason to disturb the award of child support for such a small miscalculation. Point denied.

■ In his fourth point on appeal, Father maintains four arguments against the trial court's award of attorneys' fees and costs to Mother. First, Father contends the trial court erred by allowing Mother to amend her petition at trial to include a prayer for attorneys' fees when that claim had previously been stricken by the court. We disagree.

In the early stages of the Missouri Action, Father filed a motion to strike Mother's claims for attorneys' fees and costs. The trial court erroneously granted the motion to strike and upheld its decision on a motion for reconsideration on the mistaken belief that the 1991 judgment in the California Action governed the question of attorneys' fees and costs in the Missouri Action.[6] Following clarification by the California court, the trial court learned the California court relinquished all jurisdiction over the issues of custody and child support to the Missouri trial court; thus, the trial court in the Missouri Action was free to address those issues as well as the questions of attorneys' fees and costs associated with such actions. *See* § 452.355.1.

On the day of trial, the court granted Mother leave to amend her petition to include a request for a determination of custody, child support, and other relief (including attorneys' fees and costs) concerning M.H.F. Rule 55.33(a) authorizes the relief granted by the trial court. We find no error in granting Mother leave to amend her petition since the trial court abated its two previous orders, and the clarification of the California judgment confirmed that exclusive jurisdiction over the custody and support issues rested with the Missouri trial court.

■ Additionally, Father claims the request for attorneys' fees was not properly before the trial court and that he received inadequate notice of Mother's intention to pursue such relief. We disagree. First, the request for attorneys' fees and costs were properly before the trial court because Mother was granted leave to amend her petition. Second, Father's contention is based upon a gross misstatement of the record. Mother filed an amended petition in December of 1992 that included a request for attorneys' fees and costs. Counsel exchanged letters regarding the amended petition and, during the next year and a half, counsel litigated whether the California judgment covered the attorneys' fees issue. Therefore, the record shows Father received notice, knew about, and exchanged letters with opposing counsel regarding the attorneys' fees issue.

■ Father next argues the award of attorneys' fees and costs for Mother's pursuit of custody and child support in Missouri violated the Full Faith and Credit Clause of the Federal Constitution because the California judgment already determined that both parties were to bear the costs of any litigation from 1991 forward. We disagree. No California judgment existed on the question of attorneys' fees and costs incurred while seek-

6. The Missouri Action was initially heard before Judge Voorhees of the St. Louis County Circuit Court. Just prior to trial, the matter was transferred to Judge Loftin of the newly created Family Court. Judge Loftin ruled on the request for leave to amend Mother's petition.

ing custody and child support for M.H.F. Therefore, no judgment existed to which the Full Faith and Credit Clause could apply.

Father also contends attorneys' fees were granted for work completed on the California Action. The point is meritless since no award of attorneys' fees was made to Mother's counsel in California.

■ In Father's last argument, he maintains the trial court erred in awarding attorneys' fees of $12,000 to Mother. An award of attorneys' fees is within the trial court's discretion and will not be overturned absent a showing of abuse. *Beeler v. Beeler,* 820 S.W.2d 657, 661 (Mo.App.1991). Point denied.

The judgment is affirmed.

CRAHAN, P.J., and CRANDALL, J., concur.