Dana Marie MURRAY, Respondent,

v.

Erick Brian MURRAY, Appellant.

No. WD 71381.

Missouri Court of Appeals,
Western District.

May 18, 2010.

Application for Transfer to Supreme Court
Denied June 29, 2010.

Application for Transfer Denied
Sept. 21, 2010.

Jason Davey, Kansas City, MO, for Appellant.

James D. Boggs and W. Christian Boggs, Kansas City, MO, for Respondent.

Before Division I: KAREN KING MITCHELL, Presiding Judge, and LISA WHITE HARDWICK and CYNTHIA L. MARTIN, Judges.

KAREN KING MITCHELL, Presiding Judge.

Erick Murray ("Father") appeals the judgment entered by the Circuit Court of Platte County ("trial court") dissolving the marriage between Father and Dana Murray ("Mother"). Specifically, Father challenges the custodial provisions of the parenting plan and the award of child support. We affirm the judgment of the trial court.

## Factual Background

Father and Mother were married on April 4, 2004, in Platte County. Their daughter, M.B.M. ("Daughter"), was born on January 31, 2006. Although both Father and Mother were devoted to Daughter and were very actively involved in her care, their marriage was troubled. Father asked Mother to attend marriage counseling with him, but Mother "wasn't interested." In January of 2007, when Daughter was about one year old, Mother took Daughter on a vacation in Florida without Father. During that vacation, Mother met Daniel Cross ("Cross"). When Mother returned to Missouri, she asked Father to move out of the home they shared. Father moved out of the home on Daughter's first birthday.

Mother eventually moved in with her parents and Father moved back into the couple's home. Due to Father's work schedule,[1] Mother would have Daughter on Wednesdays through Saturdays and every other Sunday, and Father would have Daughter on the alternate Sundays, as well as Mondays and Tuesdays. Father's mother would watch Daughter on Sundays when Father had to work. On the occasions when Father would request to have Daughter on Wednesdays, Mother always agreed. Prior to separation and during the period when this temporary custody schedule was in place, Daughter attended day care.

Mother continued to communicate with Cross after she returned from the vacation during which she met him, and the two visited each other periodically. A relationship ensued. On February 19, 2008, Mother gave birth to a son fathered by Cross. Cross had another son, who also lives in Florida, by a previous marriage. Cross and Mother intended to marry as soon as Mother's divorce from Father was final. Mother's desire is to take Daughter and her infant son and move in with Cross and his son.[2] Mother plans to stay at home after she marries Cross and to care for the children full time.

Father is also dating someone. He and his girlfriend, Tiffany Gensler ("Gensler"), also plan to marry and Father will move in with Gensler and her foster son, although no definite plans had been made at the time of the trial. No date had been set, and Father was unsure of when he would be moving in with Gensler. Gensler is attempting to adopt her foster son. Father is not involved in the adoption process. If Daughter were to reside primarily with Father, she would attend day care. Because Father has to be at work at 5:00 a.m., either Father's mother or Gensler would take Daughter to her day care on the two to three weekdays that Father works each week. Either Gensler or Father's mother would have to care for Daughter on Saturdays and Sundays while Father worked.

After the trial, the trial court entered a judgment and parenting plan allowing Mother to relocate with Daughter to Florida. The judgment gave Mother and Father joint legal custody and joint physical custody, but preferred Mother's proposed parenting plan over Father's. The trial court found that Mother's proposed parenting plan, which included the relocation to Florida, was in Daughter's best interests because it allowed for a parent (Mother) to care for Daughter full time, whereas both Father and Gensler worked full time, which would require that Daughter remain in outside day care. Also, the court noted that Mother's plans with Cross were more definite than Father's plans with Gensler. The court also found that Daughter's sibling relation with her infant half-brother favored her relocating to Florida with Mother and the infant.[3]

1. Father's work is scheduled on a two-week cycle. Father works from 5:00 a.m. to 5:00 p.m. On his "short weeks" he works Thursday, Friday, and Saturday, for a total of 36 hours, not including overtime. On his "long weeks" he works Wednesday, Thursday, Friday, and Saturday, for a total of 48 hours, not including overtime. He often has overtime on Sundays; sometimes it is optional, sometimes it is mandatory, and the hours vary depending on the workload. Father estimates that there are roughly sixteen Sundays per year that he does not work.

2. Cross's older son spends roughly half of his time with Cross and the other half with his mother, who lives nearby.

3. It appears that Mother plans to move to Florida regardless of what this court decides and thus allowing relocation facilitates the development of a sibling relationship.

The parenting plan adopted by the trial court provided for Daughter to be with Father from December 22 to January 2 every other year; Father would also have Daughter for one weekend each January on the weekend closest to Daughter's birthday; one weekend each October on the weekend closest to Father's birthday; each spring break; and from June 1 until August 15 each summer. This schedule allows Father roughly the same number of days that he had with Daughter before the trial, the days are just clustered together differently and Daughter will reside with Father on more days when he has to work. Mother and Cross also testified that Father could visit Daughter in Florida whenever he wanted and that Father would be welcome to stay at a home owned by Cross that was located next door to the home Cross and Mother would share. The judgment also awarded Mother child support of $571 per month. Father appeals.

### Standard of Review

We affirm the judgment of the trial court unless it is not supported by substantial evidence; it is against the weight of the evidence; or it misstates or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "There is the presumption that the best interests of the child motivate the trial court." *Buschardt v. Jones*, 998 S.W.2d 791, 796 (Mo.App. W.D.1999). A trial court's determination in a child custody matter is given more deference than in any other type of case. *Brandow v. Brandow*, 18 S.W.3d 584, 587 (Mo.App. W.D.2000).

### Legal Analysis

Father's first three points on appeal will be addressed together, as Father's argument of these points reveals that they are all interrelated.

### A. Adoption of Mother's Parenting Plan

The first three points are that the trial court erred by (1) giving preference to Mother because of her sex and financial status and because of the age of the child, in violation of section 452.375.8;[4] (2) considering an "irrelevant and non-statutory" factor (that Mother planned to stay at home to care for Daughter) as an overriding factor in choosing which parent's proposed parenting plan to adopt; and (3) adopting Mother's proposed parenting plan in that it was not submitted in good faith and was not in Daughter's best interests.

### 1. Age of the child and sex and financial status of the parents

Section 452.375.8 provides that "no preference may be given to either parent in the awarding of custody because of that parent's age, sex, or financial status, nor because of the age or sex of the child." *Id.* The particular portion of the judgment to which Father objects states, "It is true that the father has strong family ties in the Kansas City area, however *the more important consideration for a child of this age is the care given and to be given by the mother.*" (Emphasis added.) Father claims that this portion of the court's judgment shows that the trial court impermissibly preferred Mother because of her sex, her financial status, and the age of Daughter. We disagree.

We agree that the judgment of the court could have been more artfully worded. The language the court used could easily be construed as the trial court having improperly given preference to Mother because of her sex, in violation of section

**4.** All statutory references are to RSMo 2000, unless otherwise noted.

452.375.8. We find, however, after reviewing this language in the context of the entire judgment, that the above-quoted section does not establish that the trial court gave preference to Mother because she was a *mother* (a female) but because it determined that the care of a stay-at-home *parent* (presumably of either sex) would be beneficial to Daughter. Similarly, we do not find that the trial court's mention of Daughter's age automatically indicates reversible error. The statute does not prohibit all court consideration of a child's age, it merely does away with the "tender years" doctrine, which was an historical presumption favoring maternal care of younger children. In this case, we do not find that the portion of the court's judgment referring to Daughter's age shows that the court preferred younger children to be primarily in the care of their *mothers*, but that, as they are not yet of school age and thus require full-time care, they would particularly benefit from being under the care of a stay-at-home *parent* (again, presumably of either sex) as opposed to an outside day-care provider.

We also do not find that the trial court improperly considered the financial status of the parents when determining which proposed parenting plan best suited Daughter's interests. No mention of income was made in the court's judgment. And although Cross's income exceeds that of Father, there is no evidence that the trial court was impressed by the disparity. Mother testified that her decision to be a stay-at-home parent would cause the Crosses' financial situation to be "tight" but that they were going to make it work. Also, Cross's home, pictures of which Mother presented to the court, is adequate, but modest. We do not find, as Father suggests, that the trial court's consideration of the fact that Mother plans to stay at home to provide full-time care improperly injects finances into the trial court's decision. Many parents choose to work outside of the home, although their financial situation does not mandate that choice. Others elect to stay at home, even though it creates a significant financial hardship. Therefore, the fact that a parent elects to work or to stay at home does not directly reflect on the relative financial status of the parties. In addition, a court may consider factors that relate to finances, without the financial status of the parties being an improper factor in the court's decision. *See Malawey v. Malawey*, 137 S.W.3d 518, 523 (Mo.App. E.D. 2004) (a judgment that expresses concern about a mother's ability to manage her finances is not a finding as to lack of resources and thus does not violate section 452.375). Therefore, we do not find that by considering that the Mother would stay at home the trial court improperly considered the financial status of either parent.

Accordingly, we do not find that the trial court violated the terms of section 452.375.

### 2. Mother's plan to stay at home to provide full-time care

■ A trial court is obligated to make its decision regarding child custody in accordance with the best interests of the child. In making its decision the trial court is to consider "all relevant factors" including eight factors specifically delineated in section 452.375.2. In this case, the trial court's Judgment of Dissolution of Marriage made findings as to each of the eight statutory factors. Although the trial court found that four of the enumerated factors in section 452.375.2 weighed relatively equally in favor of both Mother and Father, the trial court found that three of the remaining factors weighed in favor of Mother and that one weighed in favor of Father.

In this case, Mother had definite plans to relocate to Florida. She and Cross were planning to marry and already had a child together. Cross could not easily move to Missouri, as he already had a son in Florida who was established in his school, activities, and community. Therefore, Daughter would not have the continuing option of having both of her parents in the same geographical area. The trial court considered the alternative plans presented by both parents.

In addressing section 452.375.2(1), which requires the court to consider the wishes of the parents and their proposed parenting plans, the trial court noted that both Mother's and Father's parenting plans were reasonable but found Mother's plan to be better for Daughter. In support of this finding, the trial court specifically noted that Mother's plan "provides for a stay at home arrangement for the child," in that Mother and Cross had promised to marry each other after the dissolution was concluded and then Mother would be "a full time not employed outside the home parent" for Daughter. By comparison the trial court noted that both Father and Gensler are employed full time outside of the home.

In addressing section 452.375.2(3), which requires the court to consider the interaction and interrelationship of the child with parents, siblings, and other persons significant to the child's life, the trial court found this factor to favor Mother. Although the court acknowledged that Father has strong family ties in Kansas City, it found more persuasive that Mother's plan allowed Daughter to have a relationship with her infant half-brother and also stated that the "more important consideration for a child of this age is the care given and to be given by the mother." As noted above, we find this language to again refer to the fact that Mother will be staying at home.

Finally, in considering Daughter's adjustment to home and community under section 452.375.2(5), the trial court found that Mother and Cross will reside in an appropriate home but that no evidence was presented as to the type of home in which Father and Gensler will reside once they are married. Similarly, while noting that the residential areas in Florida and Blue Springs are "probably both good surroundings for this child," the trial court found that no evidence was presented regarding the neighborhood where Daughter would live with Father. However, in finding that this factor favored Mother, the trial court stated that the "overriding factor again is that the mother will be a full time parent to the child."

The only factor that was found to favor Father was that Mother's plan involved relocating the child out of state. § 452.375.2(7).

It is clear from reviewing the trial court's findings that the primary factor that weighed in favor of the Mother's parenting plan was that she would be a full-time, at-home caregiver, while Father's and Gensler's work schedules would require that Daughter continue to attend day care two to three days a week and would require that Daughter be cared for by someone other than the Father on Saturdays and many Sundays. Although at-home care is not, as Father points out, an enumerated factor that the court must consider under section 452.375.2, that section specifically requires that the trial court determine the best interests of the child "consider[ing] all relevant factors." (Emphasis added.) The identity of the primary care provider and whether that provider is a stay-at-home parent are factors that may be considered in determining the best interests of the child and are facts that can be considered in evaluating the eight enumerated factors in section

452.375.2. In *Weaver v. Kelling*, this court found that the ability of a parent to provide full-time at-home care contributed to a conclusion that relocation was in the best interests of the children, despite the fact that the Missouri parent opposing the relocation had been actively involved in the lives of the children. 53 S.W.3d 610, 613 (Mo.App. W.D.2001).

While we are concerned about the apparent disproportionate weight that the trial court gave to the fact that Mother would be staying at home, and we take exception with the trial court's characterization of the fact that Mother will be a full-time parent as "[t]he overriding factor" in determining which home environment is better for Daughter, we affirm the trial court's Judgment that adopted an amended version of Mother's parenting plan because there is other evidence that supports the Judgment. The trial court found that Mother's parenting plan allowed Daughter to have a frequent and continuing relationship with her infant brother; provided her with a safe and stable home in a good community; and still allowed Father to have approximately the same number of days with Daughter in his physical custody as he has enjoyed with Daughter living in Missouri, albeit less evenly interspersed.

Father's proposed plan, while also reasonable, was more indefinite. Father could not say with certainty when he and Gensler planned to marry, when he planned to move in with Gensler, what Daughter's day-care situation would be, or whether he would be able to reduce his work hours or secure more regular hours.[5] While Father hoped to adopt Gensler's foster son with her, he was not part of any of the adoption process and nothing had been formalized regarding Father's in-

volvement in the adoption. Moreover, Father did not provide the type of detailed evidence as to the suitability of Gensler's residence or neighborhood that Mother presented to the trial court with respect to the home that she and Cross would share with Daughter and her brother. Therefore we find, for all of the above reasons, that the trial court's determination that Mother's proposed parenting plan was in Daughter's best interests was supported by substantial evidence.

### 3. Good-faith request to relocate

██ Finally, Father claims that Mother's request to relocate Daughter to Florida was not in good faith. While Father's argument in this respect is not clearly articulated, he appears to claim that Mother's desire to relocate with Daughter is not actually motivated by what is best for Daughter but, instead, is motivated by Mother's desire to live on the beach in Florida, and by her desire to live with her fiancé and their son. Importantly, what Father never alleges is that Mother's desire to relocate is motivated by a desire to limit Father's contact with Daughter. When a court considers whether a parent's desire to relocate with a child is in "good faith," the question is whether "the relocating parent's motive or purpose for relocating [is] something other than to disrupt or deprive the non-relocating parent of contact with the [child]." *Swisher v. Swisher*, 124 S.W.3d 477, 481 (Mo.App. W.D.2003). While Father claims that Mother's relocation will have a negative effect on Daughter's maintaining a frequent and meaningful relationship with Father, he does not claim that the effect was intentional. Accordingly, we find that Mother's request to relocate was made in good faith.

---

5. Father stated that he believed that he would, at some point, be able to get more regular "nine to five" hours, but he could not provide any definite details.

## B. Sufficiency of Details in Parenting Plan

■ Father's next point on appeal is that the trial court erred in adopting Mother's parenting plan in that the plan failed to include all of the details required by section 452.310. Specifically, Father claims that the plan fails to include: (1) the major holiday schedule for each party; (2) provisions for Father's Day; (3) the times and places for transfer of the child; (4) appropriate times for telephone access; (5) educational decisions; (6) extracurricular activities; (7) child-care providers; (8) dispute resolution; (9) the reasons that Mother should be given sole decision-making authority for religious upbringing and child-care providers; (10) who is to maintain health insurance; and (11) the payment of educational, extraordinary, and child-care expenses. Father is correct in his assertion that all of the above-enumerated items are required to be included in any proposed parenting plan submitted to a trial court. § 452.310.8. Before considering the merits of this point, we must determine whether Father has preserved it for appellate review. Because Mother's brief fails even to address this point, let alone object to its not having been preserved, we undertake this analysis *sua sponte. See Crow v. Crow,* 300 S.W.3d 561, 564 (Mo. App. E.D.2009).

Rule 78.07(c) requires that "allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Omissions of items required by section 452.310, such as those Father alleges, are included in those covered by Rule 78.07(c). *See Alred v. Alred,* 291 S.W.3d 328, 331 (Mo.App. S.D.2009) (holding that Rule 78.07(c) applied to a claim of error made pursuant to section 452.400).

The reason for the rule is "to reduce and discourage appeals and subsequent technical reversals for errors in the form of judgments that could easily be corrected by bringing them to the attention of the trial judge." *Wilson–Trice v. Trice,* 191 S.W.3d 70, 72 (Mo.App. W.D.2006). Father's motion for new trial or for reconsideration of the judgment does not include the above alleged omissions. Father never brought these alleged omissions to the attention of the trial court and thus has not preserved the issue for appellate review. Point denied.

## C. Child Support

■ Father's final point on appeal is that the trial court erred in its award of child support in that the award failed to include Father's work-related child-care costs; underestimated Father's visitation travel expenses; and allowed Mother to claim the dependent tax exemption when she has no income. Father claims work-related child-care costs of $240 per month and provides as evidence the Form 14 that Father submitted to the trial court. This form presumably is based upon Daughter's past day-care expenses. Because of the change in child custody, the $240 monthly figure submitted by Father no longer accurately represents Father's work-related child-care costs, which would now cover Daughter's care only for the summer months when Daughter is with Father, along with the week she is in Missouri for spring break, and Father's time during the winter break every other year. Father apparently has submitted no evidence as to what the amount of these child-care costs would be. Therefore, we find no error with the support award with respect to Father's work-related child-care costs.

■ We also find that substantial evidence supports the trial court's $230

monthly estimate for travel costs.[6] The information provided by Father shows that round-trip flights from Kansas City to Orlando range from $98 to a high Thanksgiving-week price of $385. Assuming that Father flies to Orlando to accompany Daughter to Kansas City (and then home again) for her summer visit, spring break visit, and odd-year winter visit, and that he incurs lodging costs for his weekend visits in October and January of $198 per visit, which is also his figure, the $230 monthly allowance determined by the court is within the range of monthly travel costs of $110 on the low end to $338 on the high end.[7]

Father's final argument is that the trial court should have allowed Father to claim Daughter as a dependent for tax purposes because Mother has no income. The only authority Father cites for this proposition is section 452.340.6. That section, however, does not apply to the parties in this case. It provides:

> The court shall consider ordering a parent to waive the right to claim the tax dependency exemption *for a child enrolled in an institution of vocational or higher education* in favor of the other parent if the application of state and federal tax laws and eligibility for financial aid will make an award of the exemption to the other parent appropriate.

§ 452.340.6 (emphasis added). Daughter is not enrolled in an institution of vocational or higher education. Therefore, this provision has no application to the case at bar. The child support awarded by the court is supported by substantial evidence. Accordingly, Father's final point is denied.

For the above-stated reasons, we affirm the judgment of the trial court.

LISA WHITE HARDWICK, Judge, and CYNTHIA L. MARTIN, Judge, concur.

---

6. Father's argument implies that the travel cost estimate of $230 determined by the trial court is intended to represent Father's travel costs *per trip*. Instead, the total estimated travel costs for the year are added up and then averaged to arrive at a *per-month* figure.

7. Father also has submitted information pertaining to expenses for meals and entertainment. Father would presumably have these costs whether he visited Daughter in Florida or in Missouri, and we do not include them in his estimated travel expense figures.