**Leanne Marie PECHER, Respondent,**

v.

**Edward George PECHER III, Appellant.**

**No. WD 75030.**

Missouri Court of Appeals, Western District.

April 30, 2013.

Carla G. Holste, Jefferson City, MO, for respondent.

Daniel E. Hunt, Jefferson City, MO, for appellant.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Edward George Pecher III ("Father") appeals a judgment of dissolution entered by the Circuit Court of Callaway County in which it dissolved the marriage, established custody and parenting time, awarded child support to Leanne Marie Pecher ("Mother") and divided the marital assets. Father contends that the court's judgment was erroneous and asserts four points on appeal. In his first point, Father alleges that the court erred "by not making a just and equitable distribution of property" in that it was not supported by substantial evidence because the court accepted Mother's valuation of the home and not the appraiser's estimation, causing an inequitable distribution. In his second point, Father assigns error to the court in awarding attorney's fees to Mother because the award was not based on substantial evidence. In his third point, Father contends that the court erred in awarding child support for the nineteen-year-old child

born of the marriage because that child failed to meet the statutory requirement of being enrolled in college by October 1 following high school graduation in order to qualify for child support. In his fourth point, Father asserts the court erred in calculating the amount of child support owed for the two minor children because the court's Form 14 calculation did not contain an overnight visitation credit for Father, nor did it accurately reflect Mother's monthly income. For reasons more fully explained below, we affirm in part and reverse in part and amend the judgment pursuant to Rule 84.14.[1]

## Factual Background[2]

Mother and Father were married in 1992 and two children were born of the marriage, Luke Edward ("Son") age nineteen and Kaylee Lynn ("Daughter") age sixteen. On December 17, 2010, Mother filed for divorce, seeking child support and sole legal and physical custody of the two minor children. On February 10, 2011, Father answered and counter-claimed for dissolution. After the parties separated, the two children remained with Mother in the marital home.

On October 5, 2011, the case was tried to the court.

Mother testified that the marriage was irretrievably broken due to Father's daily drinking to the point of intoxication. She also testified that Father was not home very much, often worked out of town, spent almost no time with Daughter, and generally did not contribute to the care of the family other than by providing a paycheck. She further testified that Father had exhibited domestic violence towards her and Son, which led to her obtaining an order of protection. Mother requested Father to pay a portion of her attorney's fees.

With regard to the marital home, Father obtained an appraisal indicating a value of $127,000. Mother testified that the appraisal obtained by Father was too high considering all of the major repairs that the home needed, including a new waste removal system, foundation repair, mold removal, interior drywall repair in ceilings from water damage, and a new HVAC system, among other things. Mother's opinion was that the home was valued at $80,000 due to all of the repairs that would need to be made in order to make it marketable.

Mother testified that Father did not pay any child support during the separation yet cashed in several small life insurance policies and kept the cash. Mother did agree that Father had given her approximately $3,000 and told her to pay his truck payment and his credit card payments for him. During the separation, Father was incarcerated for four months in the Department of Corrections for a felony DWI conviction and underwent alcohol treatment while in custody. Mother testified that the money he gave her was spent on his bills, the balance for Daughter's private high school tuition and was used to reinstate the homeowner's insurance that had previously lapsed. Mother paid the health insurance premiums for the family through her employer.

Mother did not seek maintenance but did seek child support from Father for their children. Son joined the National Guard after high school and was planning

---

1. All rule references are to Missouri Court Rules (2012) unless otherwise indicated.

2. We view the evidence in the light most favorable to the trial court's judgment and defer to the trial court's credibility determinations. *Potts v. Potts,* 303 S.W.3d 177, 184 (Mo.App. W.D.2010).

to enroll in college once he completed his advanced military training in October. His intention was to begin school in the spring semester at one of two universities, depending on which one would accept his National Guard credit hours. Son began his training in the summer after high school graduation so that he could begin college one semester late and receive tuition assistance.

Father testified that the alcohol treatment was beneficial to him and that he wanted joint custody of the children. He argued that many of the problems with the house had existed for several years and some were there when they purchased the house. He thought the children would want to have overnight visits with him, though admitted that Daughter had not once spent the night at his home throughout the preceding year following the separation. Father testified that he gave Mother several payments of varying amounts after the separation and that she obtained and spent their joint tax refund.

On December 16, 2011, the court entered its judgment. The court set forth the statutory analysis of the factors regarding the best interests of the children. § 452.375.[3] The court noted that Father's "alcohol abuse has led to the dissolution of the marriage and the need to consider the mental and physical health of the parents and children." "[Mother] testified of threats [Father] made and of violating an order of protection." Thereafter the court ordered that Mother shall have sole legal and physical custody of the minor children. The court also adopted Mother's proposed parenting plan and ordered that it be followed. The plan allowed for one overnight visit with the children for Father every other weekend. The court also ordered that Father not consume alcohol in the presence of the children, or twelve hours before or after visitation.

The court valued the marital home at $80,000 and awarded it to Mother. It then divided the marital property and ordered that Mother pay Father $40,000 as an equalization payment to balance the equitable distribution.

With regard to child support, the court rejected the Form 14s submitted by the parties and prepared its own. Pursuant thereto, the court awarded Mother $759 per month for the two children and found the current support would be $547 if support were ordered for one child. It also calculated retroactive child support for the time period of January 1, 2011 to the date of Judgment and ordered that Father pay Mother $8,349.00. Attorney fees were awarded to Mother, in the amount of $7,133.35. Each parent was ordered to pay fifty percent of Daughter's high school tuition and fees.

Father timely appeals.

### Standard of Review

■■■ "We will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law." *Murray v. Murray,* 318 S.W.3d 149, 152 (Mo.App. W.D.2010). "We will not reverse the trial court's judgment on the basis that it is against the weight of the evidence unless we have a firm basis for concluding that the judgment is wrong or that it is against the logic of the circumstances." *In re Steggall,* 296 S.W.3d 25, 27 (Mo.App. W.D.2009). The trial court has broad discretion in the valuation and classification of property and will

---

**3.** Section 452.375.2 requires the court to assess eight factors in determining the best interest of the children. All statutory references are to RSMo 2000 cumulative as updated unless otherwise indicated.

not be disturbed absent an abuse of that discretion. *Quilty v. Fischer,* 393 S.W.3d 130, 132–33 (Mo.App. W.D.2013). This standard of review is applicable to all points raised on appeal and will not be repeated in each point.

## I.

In his first point, Father alleges that the court erred "by not making a just and equitable distribution of property" in that it accepted Mother's valuation of the home and not the appraiser's opinion, causing an inequitable distribution.

### Analysis

 Father contends that the trial court erred when it accepted Mother's valuation of the marital home at $80,000 because Mother is not an expert in residential appraisals. Mother and Father owned the home jointly and she resided therein. "In Missouri, it is a general rule that 'the owner of property is competent to testify as to its value.'" *Quilty,* 393 S.W.3d at 133 (citing *Farley v. Farley,* 51 S.W.3d 159, 164 (Mo.App. S.D.2001)). Thus, Mother, as an owner, was qualified to testify as to her opinion of the value of the property. In support of her opinion, Mother offered several photographs showing the condition of the home and the repairs that it needed. "While it is true that the trial court may not enter a valuation of marital property not supported by evidence at trial, the court nonetheless enjoys broad discretion in valuing marital property." *Quilty,* 393 S.W.3d at 133 (citing *Foster v. Foster,* 149 S.W.3d 575, 581 (Mo.App. W.D.2004)). The court is not required to accept or give greater weight to expert testimony over an owner's testimony concerning the value of real property. *Foster v. Foster,* 149 S.W.3d at 582 (internal citation omitted). Here, the court heard evidence from three witnesses concerning the value of the mar-

ital home and was provided with an appraisal and photographs of the property. "The trial court may 'believe or disbelieve the testimony of either party concerning the valuation of property in a dissolution proceeding, and can disbelieve expert testimony.'" *Dowell v. Dowell,* 203 S.W.3d 271, 276 (Mo.App. W.D.2006) (citation omitted). The trial court may receive any relevant evidence on valuation of property and we "give great deference to the trial court's decision." *Id.*

Because evidence at trial, including that of the expert appraiser, indicated that the home required major repairs and would not currently pass a codes inspection, there was substantial evidence to support the court's finding that the marital home was worth less than its appraised market value. In addition, because the trial court has great flexibility in valuing marital property, we discern no abuse of discretion by the trial court in adopting the valuation of $80,000. Point one is denied.

## II.

In his second point, Father argues the trial court erred in ordering Father to pay a portion of Mother's attorney's fees, alleging that there was no substantial evidence to support the award.

### Analysis

 Father contends that the only reference to attorney fees at trial was simply Mother requesting them. Father further points out that the court did not make any finding in its order to support the award.

 The trial court is granted broad discretion in determining whether an award of attorney fees is appropriate and in determining the amount of that award. *Hall v. Hall,* 118 S.W.3d 252, 258 (Mo.App. W.D.2003) (internal quotation marks and citation omitted). The trial court is an expert on the issue of attor-

ney's fees and its ruling on distribution of attorney's fees is presumptively correct. *Craig–Garner v. Garner*, 77 S.W.3d 34, 40 (Mo.App. E.D.2002) (citation omitted).

Generally, parties are responsible for paying their own attorney fees. *Reiter v. Reiter*, 372 S.W.3d 899, 905 (Mo. App. W.D.2012). Section 452.355.1 permits, but does not require, a trial court to award attorney's fees to one party. We will overturn the trial court's decision in this regard only if we find an abuse of this discretion. *Id.* Relevant factors will likely balance differently in each case. *Id.* "[A] showing of unusual circumstances justifying deviation from the normal rule that each party should bear his own litigation costs" must be made before the court will award attorney's fees. *Id.* (internal citation omitted).

Pursuant to section 452.355.1, the trial court awarded attorney's fees to Mother, which the court may do after considering all the "relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." The financial resources of the parties in terms of monthly income are similar. Mother's monthly income is $4,172 and Father's monthly income is $3,762. This is not a case where one party can clearly afford the fees and the other cannot.

However, that does not end the analysis. The trial court was familiar with the merits of the case, the actions of the parties during the marriage, as well as their actions since the point of separation. These actions would include the lack of child support paid to Mother, Father's excessive drinking that resulted in him going to prison, violation of an order of protection by Father and the cashing in of life insurance policies. The trial court may grant an award of attorney fees, even if the parties' financial condition does not otherwise necessitate an award of fees, where misconduct has taken place. *Engeman v. Engeman*, 123 S.W.3d 227, 240 (Mo.App. W.D. 2003) (citing *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 655 (Mo. banc 1989)). Here, the evidence would support a finding by the trial court that Father's actions constituted sufficient misconduct to justify the award.

The trial court was in the best position to observe the parties, evaluate the evidence and make this determination. We find no abuse of discretion by the trial court. Point two is denied.

## III.

In his third point, Father contends that the court erred in awarding child support for his Son because Son failed to meet the statutory requirement of being enrolled in college by October 1 following high school graduation in order to qualify for child support.

### Analysis

Section 452.340 governs the support of children through the payment of child support. In Missouri, child support is to be paid for minor children until they turn age eighteen, at which time the obligation of the parent paying the support ends. § 452.340.3(5). There are two exceptions that can extend the payment of support as outlined in sections 452.340.4 and 452.340.5: 1) "if the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried" or 2) if the child is enrolled in at least twelve credit hours per semester in a secondary education program. For the second exception to apply, the child must be enrolled in school not later than October 1 following graduation from high school. § 452.340.5.

When applying section 452.340.5, a trial court enjoys discretion in finding a child emancipated or unemancipated. *Zal-*

*manoff v. Zalmanoff,* 862 S.W.2d 941, 945 (Mo.App. E.D.1993). The provisions of section 452.340.5 are construed liberally to be consistent with the public policy interest of encouraging children to pursue higher education. *Pickens v. Brown,* 147 S.W.3d 89, 92 (Mo.App. W.D.2004) (citation omitted); *see also Perry v. Perry,* 114 S.W.3d 865, 868 (Mo.App. W.D.2003). "Even if attendance is not continuous, a court may find that a parent's support obligation shall continue if all of the following elements are present: (1) the interruption from enrollment is temporary; (2) there is an evident intent to re-enroll; and (3) there are manifest circumstances which prevented continuous enrollment." *Perry,* 114 S.W.3d at 868 (citing *Harris v. Williams,* 72 S.W.3d 621, 624 (Mo.App. E.D.2002)).

In applying section 452.340.5 to the instant case, we find it very similar to the facts presented in *Kasten v. Frenz,* 109 S.W.3d 210, 214 (Mo.App. E.D.2003). In *Kasten,* the son joined the National Guard as a junior in high school and enrolled for Fall semester classes at a university upon graduating from high school. *Id.* at 213–14. The son then had to leave school to attend a seventeen-week training program for the military in Fort Gordon, Georgia. *Id.* at 214. The court found that the son satisfied the three-part analysis set forth in *Harris* as follows: (1) the interruption in son's enrollment was temporary, (2) the son had the intent to re-enroll and did so upon his return, and (3) manifest circumstances existed that prevented the son from staying in school since he had been

ordered by the military to delay his coursework and physically move to Fort Gordon, Georgia. *Id.* Thus, the court held that the son was not yet emancipated under section 452.340.5. *Id.* at 215. The *Kasten* court also noted that although the son was not at the university for Fall semester, he was in fact earning transferable college credit hours while in National Guard. *Id.* Indeed, the son's advanced individual training earned him more than the hours required to fulfill the twelve credit hour requirement of section 452.340.5. *Id.* at n. 2.

Father contends that because his Son had joined the National Guard[4] and was not enrolled in college as of October 1, he does not qualify for the college exception under the statute. Father argues that since Son does not qualify for the college exception, the court is statutorily prohibited from ordering Father to pay child support to Mother for Son.

At trial, the evidence established that Son had joined the National Guard while a junior in high school in order to be eligible for assistance with college tuition expenses. Son was in Georgia completing his training on October 1 and thus could not be enrolled in college until the following semester. Son intended to go to college at either the University of Missouri or Lincoln University, depending on which would accept the most transferable credits earned by his training in the National Guard.

Given that Missouri courts are to construe the section liberally in order to en-

---

**4.** Notably, service in the National Guard does not qualify as active duty. Section 10 U.S.C. section 101(d)(1) states: "The term 'active duty' means full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. Such term does not include full-time National Guard duty." Thus, active duty in the military as a trigger of emancipation under section 452.340.3(3), does not apply to National Guard service.

courage children to pursue higher education, the evidence supports the trial court's finding that Son's delay in enrolling in college was due to a manifest circumstance that prevented his timely enrollment. As such, we agree that the college exception to emancipation applies and Father should pay child support for Son until Son's emancipation occurs. Point three is denied.

## IV.

In his fourth point, Father asserts the court erred in calculating the amount of child support owed because the court's Form 14 calculation did not contain an overnight visitation credit for Father on Line 11, nor did it accurately reflect Mother's monthly income.

### Analysis

"A two-step procedure is used by the trial court to determine child support awards pursuant to section 452.340 and Rule 88.01." *Heck v. Heck*, 318 S.W.3d 760, 764 (Mo.App. W.D.2010) (citation omitted). First, the trial court must accurately determine the presumed child support amount pursuant to Form 14. *Id.* Second, the trial court must determine whether or not to rebut the presumed child support amount as being unjust or inappropriate. *Potts v. Potts*, 303 S.W.3d 177, 194 (Mo.App. W.D.2010). Rule 88.01 provides that there is a rebuttable presumption that the amount of presumed child support calculated pursuant to Form 14 is correct unless, after consideration of relevant factors, the amount is determined to be unjust or inappropriate. *Heck*, 318 S.W.3d at 764.

To determine whether the presumed child support has been calculated correctly, the trial court is to be guided by the Form 14 Directions ("Directions") and the evidence of the case. *Id.* In finding the presumed child support amount, the trial court can either accept one of the parties' Form 14 calculations, or reject them both and prepare the court's own Form 14. *Potts*, 303 S.W.3d at 194. Here, the court prepared its own Form 14.

Father alleges that the amount of child support awarded to Mother was in error because (1) it does not contain a credit for Father's overnight visitation, and (2) it was not calculated using the correct monthly income amount for Mother. We will address each in turn.

 With regard to the absence of an overnight visitation credit, the Parenting Plan adopted by the court contains overnight visitations of either 37 or 38 days per year depending on certain holidays. Contrary to Father's argument, the plan does not provide for 52 overnights a year putting him in the 6% credit range pursuant to the chart contained in the Directions. The weekends are alternating weekends with only one overnight per weekend on Saturday night. In addition to the 26 nights based on weekend visits alone, the holiday schedule provide either 11 or 12 additional overnights depending on the year. Thus, at best, Father would have either 37 or 38 overnights per year pursuant to the approved Parenting Plan. Form 14 allows for an overnight visitation credit beginning with 36 overnights per year. *See* Directions for Line 11. However, the evidence showed that Daughter had not stayed overnight with Father even one time since the separation, for over one year. Further, Son would be in the military or college making visitation more difficult, and Father had perpetrated domestic violence against Son, which may play a vital role in Son's decision to follow the visitation plan set forth in the Parenting Plan.

In formulating a Form 14, the court can rebut the visitation or parenting time cred-

it adjustment according to Comment C of the Directions for Line 11, which states:

C. COMMENT: In any proceeding to establish a child support order or to modify the support payable under an existing order, the adjustment on line 11 may be rebutted if the parent obligated to pay support:

(1) Without fault of the parent entitled to receive support, does not exercise the periods of overnight visitation or custody with the children who are the subject of this proceeding under any order or judgment,

(2) Does not incur significant expenditures as a result of exercise of the periods of overnight visitation or custody awarded under any order or judgment, or

(3) Without fault of the parent entitled to receive support, exercises the periods of overnight visitation or custody awarded under any order or judgment with some but not all of the children who are the subject of this proceeding.

Based on the ages of the children and on the evidence of the parties' behavior during the preceding year, it is reasonable to find that Daughter may not participate in overnight stays for all 37 or 38 visits awarded Father simply because they were awarded to Father. The court need not assume 100% adherence to the visitation schedule when thus far no overnight visits had taken place with Daughter.[5] With regard to Son, in light of Father's past domestic violence towards him, which was not disputed by Father, and because Son would be attending college or at military training, the court could find that the chances of Son staying overnight in 100% adherence to the visitation schedule were slim.[6] In other words, both children would have to comply with 100% of the overnight visitation awarded in order for Father to actually qualify for a credit under the Form. We do not find that the court abused its discretion in not awarding Father an overnight visitation credit in light of the evidence rebutting that all awarded overnights would be exercised by these two teenage children and their father.

■ Father also challenges the amount of monthly income attributed to Mother on the court's Form 14. Both parties appear to agree that the evidence was that Mother's income should have been reflected as $4,172, rather than $3,782, a difference of $390 per month. Father argues that the income of both parties must be correct in order for the corresponding child support calculation to be accurate. Mother argues that if the trial court had entered Mother's income correctly, it would only create a difference in child support of $30 per month for two children. Mother characterizes this as *de minimis*.

Mother cites two cases to support her argument that a $30 miscalculation of the support obligation is *de minimis*. In the first, the miscalculation was as to a party's *income*, which was stated incorrectly by $42. *Franke v. Franke*, 913 S.W.2d 846,

5. Father argues that because there was no court order in place during the couple's separation requiring the children to have overnight visits with Father, it cannot be said that he did not exercise a previous "award" of overnight visits. Though this is true, the application of the Comment goes to the intent of the parties as well as what is required. Father and Daughter displayed no evidence of their intention of having overnight visits voluntarily. In light of their actions and of evidence at trial that Father spent almost no time with Daughter, the evidence rebuts the equity of awarding a visitation adjustment to Father.

6. Neither party raises any issue regarding the lack of appointment of a guardian ad litem pursuant to section 452.423 so we do not address it here.

851. (Mo.App. E.D.1995). There, the father argued that this miscalculation of mother's income for child support purposes fundamentally flawed the entire child support award. The court in *Franke*, though acknowledging an error, held that this amount was *de minimis* and that it would not disturb the award for such a small miscalculation. *Id.*

In the second case, the parties agreed that the trial court miscalculated the amount of income that should be imputed to the father in calculating the presumed child support amount. The result was that father's presumed child support amount was increased by a minimum of $70 per month. *Miller v. Miller*, 184 S.W.3d 174, 185 (Mo.App. S.D.2006). In that case father was in fact earning $1,200 per month, but was capable of earning between $6,500 and $7,200 per month, depending on whose evidence was believed. The court there held that $70 per month, which equaled approximately 6% of the father's current actual monthly income of $1,200 per month, was not *de minimis*. Upon finding an additional error in the calculation of the presumed child support amount, the court reversed. *Id.*

In this case, the court's use of the incorrect income figure creates no other changes in the overall calculation other than an increase of $30 per month in support. The $30 per month difference in the presumed child support amount is less than 1% of Father's actual monthly income of $3,762. However, $30 is also equal to almost 4% of the presumed monthly child support amount of $759. Because this is a matter that is easily resolved, we do not have to determine whether the error in this case is *de minimus* or not.

Because both parties agree that the trial court miscalculated Mother's income by $390 per month and that this miscalculation resulted in a presumed child support amount that was inaccurate by $30 per month, pursuant to Rule 84.14 we are allowed to "give such judgment as the court ought to give." We therefore modify the judgment of the trial court to show that Father is ordered to pay $729 per month in support for the two children. The trial court also granted a judgment for an arrearage of child support based on the inaccurate figure of $759 per month multiplied by eleven months, for a total arrearage as of the date of the judgment in the total sum of $8,349. Based on this Court's finding that the proper child support amount is $729, we further amend the trial court's judgment pursuant to Rule 84.14 modifying the arrearage amount to the total sum of $8,019.00 as of the date of the entry of the underlying judgment.

We find that the court did not abuse its discretion in not using a visitation adjustment credit in calculating the award of child support to Mother. However, we find that the trial court did miscalculate the presumed child support amount by $30 and that this results in a miscalculation of the child support arrearage. For these reasons, point four is granted.

## Conclusion

Pursuant to Rule 84.14, we modify Father's child support obligation to the sum of $729 per month for the two children born of the marriage. We further amend the judgment to change the child support arrearage to the sum of $8,019.00 as of the date of the entry of the judgment below. In all other respects, including the payment of Daughter's private high school tuition, the judgment of the trial court is affirmed.

All concur.