60 S.W.3d 656 (2001)
H.S.H., a minor, By and Through her next friend, R.A.H., Petitioner, and
R.A.H., Individually, Petitioner/Appellant,
v.
C.M.M., Respondent/Respondent, and
P.H., Intervenor/Appellant.
Nos. ED 78341, ED 78342.
Missouri Court of Appeals, Eastern District, Division One.
September 18, 2001.
Motion for Rehearing and/or Transfer Denied October 31, 2001.
Application for Transfer Denied December 18, 2001.
*658 Mark D. Hirschfeld, Clayton, MO, for appellant & intervenor.
Joseph S. Sanchez, Festus, MO, for respondent.
Lisa Ann Herder, Herder & Herder, St. Louis, MO, Guardian Ad Litem.
Motion for Rehearing and/or Transfer to Supreme Court Denied October 31, 2001.
CRANE, Judge.
Father and grandmother appeal from the trial court's judgment in a lawsuit that father filed to determine paternity, support and custody of his biological daughter. Father claims the trial court erred in restricting his temporary custody and visitation by prohibiting him from allowing his daughter to be in her grandmother's presence while in father's custody and in granting sole legal custody to mother. Grandmother, who intervened in the case to obtain grandparent visitation rights and whose petition was dismissed, argues the trial court erred in ordering her to pay a portion of mother's attorney's fees. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
C.M.M. (mother) and R.A.H. (father) are the biological parents of H.S.H. (child), born on September 28, 1994. Mother and father are not married. P.H. (grandmother) is the child's paternal grandmother.
In August 1998, mother and father separated and mother began living with a boyfriend. Grandmother made a call to Elizabeth Stoodley, the executive director of a domestic violence agency, reporting that child had indicated that she had been sexually abused by mother's boyfriend. Ms. Stoodley suggested that she take the child to a hospital and made a hotline call to Division of Family Services (DFS). On August 21, 1998 father and grandmother took child to Christian Hospital for an examination. Dr. Lee Meyers examined child, but the results of his examination were inconclusive.
Father did not tell mother about his suspicions or about the examination. After this examination, father sought an ex parte order of protection. Mother was first informed about the sexual abuse allegation and examination when she was served with the ex parte order. At the ex parte hearing, father requested that mother have no visitation rights with child. However, child was returned to mother on a condition that the boyfriend not be in the house until the DFS conducted a full investigation.
On September 10, 1998 a second evaluation of child was made at grandmother's request by Nancy Duncan, R.N., Pediatric Nurse Practitioner for the Child Protection Team at St. Louis Children's Hospital. Father informed mother of the examination before child was taken to the hospital; mother told him that the GAL and DFS did not want another examination of the child and she begged him not to do it. Father knew that a DFS worker recommended that child not be subjected to another physical examination. Father and grandmother took child to Children's Hospital. Ms. Duncan performed a full and detailed examination and found no physical evidence of any abuse.
During the DFS investigation, grandmother also accused her own boyfriend and mother's ten-year-old brother of abusing child. The DFS investigation resulted in a report of unsubstantiated sexual abuse.
Pursuant to court order father obtained slides of child made when she was examined at Children's Hospital. He gave them to grandmother, who had copies made, and sent them to the University of Missouri for inspection by Dr. Laurie *659 Frazer. He testified that Dr. Frazer did not find physical evidence of sexual abuse. He also sent the slides to his aunt, who is a nurse, for inspection.
Grandmother was dissatisfied with the findings of no sexual abuse. Grandmother telephoned Ms. Stoodley, called her a liar, claimed Ms. Stoodley knew that grandmother's boyfriend had abused child, and threatened to shoot her. Grandmother made multiple threatening calls and then breached security at the domestic violence agency office and yelled and flung papers until she was escorted out of the office by the police. Grandmother also telephoned Ms. Duncan three times and left voice mail messages accusing her of covering up child's abuse. Grandmother told mother she believed the FBI, CIA and ATF were involved in covering up child's abuse.
In January, 1999 Ms. Duncan telephoned mother and told her that grandmother was trying to seek a third examination of child, which would involve child being sedated. Grandmother testified that the third evaluation was urged by an advocacy group to whom grandmother had sent a file of the DFS records and medical examinations and asked for help. Grandmother corresponded with the advocacy group under an e-mail address, "Justice for [Child]."
On February 1, 1999 child and father filed a petition for Declaration of Paternity, Child Custody, Temporary Custody and Visitation Rights and Child Support. In Count I father sought a determination that father was child's biological father. In Count II father sought an order awarding mother custody and father reasonable rights to temporary custody and visitation, and requiring father to pay reasonable child support. Mother filed an answer admitting that father was child's biological father and filed a petition seeking an order restricting father's rights to temporary custody and visitation. The trial court entered a temporary order allowing father visitation, but prohibited father from allowing grandmother to have any contact with child. Grandmother intervened and filed a petition for grandparent visitation rights. After a bench trial, the court entered its findings, conclusions and judgment of paternity, support and custody. The court awarded legal custody and primary physical custody to mother, with rights of temporary custody and visitation to father. However, the court ordered that father not permit grandmother to be in child's presence during father's custody of child. The court dismissed grandmother's petition because the statutory prerequisites had not been established.
The court found that mother's attorney charged a reasonable fee of $150.00 per hour. Her attorney worked a total of 28.42 hours for a total bill of $4,263.00. The court ordered grandmother to pay $2,200.00 of mother's attorney's fees.

FATHER'S APPEAL
Both of father's points claim trial court error in its custody determinations. As in all court-tried cases, we will sustain the trial court's decree unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. Rios v. Rios, 935 S.W.2d 49, 51 (Mo.App.1996). In child custody matters we give the trial court's decision greater deference than in other cases. Id. We will reverse the trial court's custody determination only if the welfare of the child requires a different disposition. Franke v. Franke, 913 S.W.2d 846, 849 (Mo.App.1995).
In his first point father contends that the trial judge erred in restricting father's temporary physical custody and visitation by placing the following restriction on father's *660 visitation: "Father shall not expose the minor child to [Grandmother], and therefore, during Father's periods of temporary physical custody, [Grandmother] shall not be permitted by Father to be in the presence of the minor child." He argues that there was no evidence that the child's physical health or emotional development would be endangered by contact with grandmother while in father's custody.
A parent who is not granted custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development. 452.400.1 RSMo (2000). "The trial court has broad powers under Section 452.400, RSMo, to impose restrictions and requirements upon visitation for the health and well-being of the children." J.A.D. v. F.J.D., 978 S.W.2d 336, 340 (Mo. banc 1998). A trial court may restrict children from being in the presence of individuals whose presence and conduct may be contrary to the best interests of the children. Id. When the trial court places a restriction on visitation it must find that visitation would endanger the child's physical health or impair the child's emotional development. Mund v. Mund, 7 S.W.3d 401, 403 (Mo. banc 1999); see also, Parker v. Parker, 918 S.W.2d 299, 300 (Mo.App.1996). If it does not make an explicit finding we will presume it made an implicit finding in accord with the result reached, if supported by substantial evidence. Mund, 7 S.W.3d at 403-04.
The trial court explicitly found: "An award to Grandmother of reasonable visitation with the minor child, will in the opinion of the Court, impair the emotional development of the minor child, and therefore, in the opinion of the Court, it is contrary to best interests of the minor child that Grandmother be awarded reasonable rights of visitation with the minor child." Based on this explicit finding and the result, we presume the trial court implicitly found that child's contact with grandmother during father's visitation would also impair child's emotional development.
Substantial evidence supports such a finding and the restriction on father's visitation. Mother testified that, after the second sexual abuse examination, child became very withdrawn at school and was afraid to leave her mother's side. The Guardian Ad Litem testified she believed grandmother has not given up her belief that child was abused and needs justice. The G.A.L. testified that the only way to adequately ensure that child's safety, well-being, and emotional development will be protected is to have no contact with grandmother. The G.A.L.'s testimony was supported by the evidence that grandmother had threatened the professionals who had not agreed with her and grandmother's trial testimony. Grandmother testified that from this experience she "learned that justice does not always work in the best interest of the child." She further testified that Ms. Duncan falsified the sexual abuse evaluation and substituted photographs of another child, that Ms. Stoodley lied when she testified that grandmother threatened her with a gun, and that the advocacy group falsified her e-mails by adding material indicating that grandmother was trying to arrange a third physical exam in Kansas City, that the police had been involved in covering up the sexual abuse, and that the ATF had threatened her. Grandmother also testified that she observed incidents from which it could be concluded that her boyfriend abused the child and that she could not get anyone to investigate this.
Father argues that this evidence supports a restriction on grandmother's visitation *661 rights, but not on his. The evidence supporting a finding that grandmother's presence would injure the child's emotional development is sufficient to restrict child from being in grandmother's presence during father's temporary custody of child. Point one is denied.
In his second point, father claims the trial court's denial of joint legal custody was not supported by the evidence and was contrary to statutory policy. The trial court found:
(a) Joint legal custody, as defined in Section 452.375.1 R.S.Mo., requires, in the opinion of the Court, agreement between the parties on decisions or mediation of disputes affecting the health, education and welfare of the minor child.
(b) In the opinion of the Court, the parties, both of whom love the minor child deeply, have evidenced an inability to communicate at the decree which, in the opinion of the Court, is essential to insure that the minor child does not suffer from any stalemate while a mediator or the court, neither of whom are parent to the minor child, attempt to resolve the parties' impasse.
"`Joint legal custody' means that the parents share the decision making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision making rights, responsibilities, and authority." 452.375.1(2) RSMo (2000). Joint legal custody "was designed to facilitate the best interest of the child by allowing both parents to share in the decision making of raising the child." A.J.K. by R.K. v. J.L., 980 S.W.2d 81, 85 (Mo.App.1998), quoting J.L.S. v. D.K.S., 943 S.W.2d 766, 774 (Mo. App.1997).
"An important factor for the trial court to consider when determining legal custody is the parent's ability to cooperate and function as a parental unit." Schwartzkopf v. Schwartzkopf, 9 S.W.3d 17, 21 (Mo.App.1999). If the parents are unable to communicate or cooperate and cannot make shared decisions regarding the welfare of the child, joint legal custody is inappropriate. Id.
In this case there was evidence that mother and father could share in the decision making on most issues concerning the child and the trial court ordered that both parents confer with each other and discuss all such decisions. However, the parties did not communicate and agree on how the child should be treated with respect to the alleged sexual abuse. Father obtained a physical examination of child for sexual abuse without informing mother and obtained a second physical examination over mother's objections as well as the objections of professionals. Under these circumstances, the welfare of the child was served by the trial court's order requiring the parents to confer with each other on most decisions regarding the child, but does not require joint legal custody.
Father argues that the trial judge had made up his mind to reject joint legal custody before hearing all of father's testimony. We disagree. The judge commented during father's testimony: "From what I've heard so far, she thinks the child's not been sexually abused; he does. I don't see that that's going to be a joint legal custody case. * * * * They can't make joint decisions, I don't think." A judge is entitled to presumption that he or she will not undertake to preside at trial in which the judge cannot be impartial. Ledbetter v. Sampson, 924 S.W.2d 617, 618 (Mo.App.1996). The trial judge's reference to "what I've heard so far" does not indicate that the judge had finally made up *662 his mind but rather may be interpreted as an interim conclusion subject to reevaluation upon the presentation of additional evidence. Ledbetter, 924 S.W.2d at 618. Point two is denied.

GRANDMOTHER'S APPEAL
Grandmother argues that the trial court erred in ordering her to pay a portion of mother's attorney's fees because no evidence of her financial situation was adduced at trial. The trial court found: "Grandmother's Petition of Visitation, which Husband supported, in the opinion of the Court, was without jurisdictional or evidentiary support and caused Mother to incur unnecessary additional attorneys fees. Consequently, Husband and Grandmother shall contribute to payment of the attorneys fees of Mother." It ordered grandmother to pay $2200 of mother's attorney's fees.
Grandmother's petition for visitation is governed by Section 452.402 RSMo (2000). Section 452.402(7) provides that the court may award reasonable attorney's fees to the prevailing party. Under this statute a reasonable fee may be assessed against a grandparent who does not prevail. Tice v. Tice, 872 S.W.2d 148, 149 (Mo.App.1994). As in Tice, grandmother's brief does not mention Section 452.402(7) and does not claim that mother was not the prevailing party or that the amount of the award was unreasonable. Accordingly, this point has no merit and is denied.

Conclusion
The judgment of the trial court is affirmed.
WILLIAM H. CRANDALL, JR., P.J. and MARY R. RUSSELL, J., concur.