

## Missouri Court of Appeals
### Southern District

#### In Division

IN THE INTEREST OF:                     )
D.J.Z., a minor child under seventeen   )
years of age,                           )
                                        )
MISSOURI DEPARTMENT OF SOCIAL           )
SERVICES, CHILDRENS DIVISION,           )
and, CRAWFORD COUNTY JUVENILE           )
OFFICE,                                 )
                                        )
   Petitioners-Respondent,     )
                                        )
v.                                      )   No. SD38618
                                        )
D.Z.,                                   )   Filed: **July 29, 2025**
                                        )
   Respondent-Appellant.       )

APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Scott J. Schrum, Special Judge

**<u>AFFIRMED</u>**

  D.Z. ("Father") appeals the judgment of the trial court terminating his parental rights to his son, D.J.Z. ("Child"). The trial court terminated Father's parental rights on grounds of abuse and neglect based on the following conditions or acts of Father: (1) a mental condition rendering Father unable to provide necessary care for Child; (2) severe or recurrent acts of physical abuse; and (3) "repeated or continuous failures . . . in that Father has either caused physical injury to

[Child] or failed to protect [Child] from abuse by Mother." *See* §211.447.5(2).[1] The trial court also found that termination of parental rights ("TPR") was in Child's best interest. *See* §211.447.7.

Father raises seven points on appeal: one related to the denial of his motion to reopen evidence (Point I); two related to the alleged failure of the Children's Division ("CD") to provide him a copy of the social study report ("Social Study") (Points II and III); three related to the findings that Father committed abuse and neglect (Points IV-VI); and one related to the finding that TPR was in the Child's best interest (Point VII). Finding no error, we affirm.

**Factual and Procedural History**

On August, 12, 2021, Father and his wife, N.Z. ("Mother"), took Child to Missouri Baptist Hospital in Sullivan, Missouri. Father told medical staff that he accidentally dropped Child while burping him. Medical staff found Child with multiple injuries, including: (1) fractures of the femur, ulna, humerus and ribs; (2) a liver laceration; (3) bruising of the penis; (4) a swollen and tender leg; and (5) bilateral "subconjunctival hemorrhages," or bleeding in the white parts of both eyes. Several different areas of older, healing fractures were also found.

Child was transferred to St. Louis Children's Hospital. There, Child was examined by Dr. Adrienne Atzemis, a "child abuse pediatrician." Dr. Atzemis's ultimate diagnosis was "child abuse, battered child syndrome." Dr. Atzemis reviewed records of an earlier hospital visit that took place around July 4, 2021, when Child was about two months old. X-rays taken at that time revealed even earlier bone fractures. Dr. Atzemis determined Child was not at risk for metabolic bone disease. Genetic testing did not reveal any genetic condition, including brittle bone disease, that would explain the fractures.

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016 as amended through March 25, 2024, the date of the trial.

On March 25, 2024, a TPR hearing was held as to both Father and Mother. There, Dr. Atzemis testified that all of Child's fractures could not have come from a single event, as stated by Father; that the majority of Child's injuries had evidence of healing, indicating time had passed between fractures; that Child did not have a genetic condition, such as metabolic bone disease, that could otherwise explain Child's injuries; that Child's injuries, consistent with non-accidental "[i]nflicted trauma," were the result of abuse; and that Father and Mother had primary care and control of Child prior to his arrival at the hospital.

Whitney Boyer, Child's case manager ("Case Manager") at CD, testified that Child entered the custody of CD on August 22, 2021; that, at the time of trial, Child had been in CD's custody for 31 months, during which time Child did not sustain additional fractures or injuries; that, following a psychosexual evaluation, Father was recommended sex offense-specific treatment; that, while Father completed recommendations under the Social Study it was in Child's best interest that Father's parental rights be terminated; and that Father caused, or failed to protect Child from, Child's injuries.

Father, who was represented by counsel, did not testify or offer evidence at the TPR hearing. However, all documents in Father's underlying criminal case in which he was charged with Abuse and Neglect of a Child (§568.060) and Endangering the Welfare of a Child (§568.045), as well as his testimony at his adjudication hearing, was entered into evidence without objection.[2] Also entered into evidence was a copy of the Social Study, which had been filed with the trial court on January 21, 2024 and served to Father's trial counsel on November 14, 2023. When the Social Study was received into evidence at the TPR hearing, Father's trial counsel stated, "[n]o objection."

[2] A jury trial in Father's underlying criminal case is scheduled for September 8, 2025.

3

At the TPR hearing, Mother submitted an expert report by Dr. Miller. Dr. Miller did not testify at the TPR hearing, but did at the adjudication hearing. A transcript of the adjudication hearing, including Dr. Miller's testimony, was admitted into evidence at the TPR hearing. Dr. Miller testified that he was "asked to proffer an alternative medical explanation if [he] found one," and that it was "highly unlikely that [Child's injuries were the result of] child abuse" and, instead, were the result of a bone disorder. At the adjudication hearing, the court made a specific finding that it found Dr. Miller's testimony not credible.

While the TPR hearing concluded on March 25, 2024, the trial court left the evidentiary record open until April 22nd. Father did not submit any evidence during that time. On April 29th, the trial court entered its Judgment granting a TPR as to Father. On May 20th, the trial court entered its Amended Judgment, adding fees for the guardian ad litem and appointed counsel.

On May 31st, more than thirty days after the trial court entered its Judgment, and eleven days after its Amended Judgment, Father filed a motion to reopen the evidence. Father also moved to set aside, amend, correct, or reconsider the Judgment or, in the alternative, for a new trial, arguing, as relevant here, that: (1) the trial court erred in proceeding to trial because a copy of the Social Study was not made available to him; (2) the evidence was insufficient to support TPR; and (3) the trial court abused its discretion in finding that TPR was in Child's best interest. The trial court denied both motions, and this appeal followed.

### Analysis
#### *Motion to Reopen Evidence*

In his first point, Father contends the trial court erred in denying his motion to reopen the evidence in that there would have been "no inconvenience to the court nor unfair advantage to one of the parties[.]"

4

"We review a trial court's ruling on a request to reopen the evidence for an abuse of discretion." ***Gardner v. Gardner***, 689 S.W.3d 530, 541 (Mo. App. S.D. 2024) (internal citations omitted). "An abuse of discretion occurs only when the trial court's ruling is 'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.'" ***Id.*** at 539. "It is the appellant's burden to persuade us that the circuit court abused its discretion and that the abuse resulted in prejudice." ***Id.*** at 541.

"When there is no inconvenience to the court or unfair advantage to one of the parties, it is an abuse of discretion for a trial court to refuse to permit the introduction of material evidence which might substantially affect the merits of the case." ***Id.*** (citing ***In Re Marriage of Hall***, 645 S.W. 701, 703 (Mo. App. S.D. 2022)). However, "a motion to reopen the evidence is normally filed ***after*** a case has been submitted to the circuit court, but ***before*** judgment is entered." ***Id.*** (citing ***Williams v. Williams***, 669 S.W.3d 708, 715 (Mo. App. E.D. 2023)) (emphasis added). "Requiring the trial court to reopen the evidence ***after*** it entered judgment would inconvenience the court because it would require the court to set aside its judgment, conduct an evidentiary hearing where the additional evidence is offered, make new findings on the additional evidence, and enter a new judgment." ***Id.*** (emphasis added).

Here, Father did not testify or submit any evidence at the TPR hearing. While the TPR hearing concluded on March 25, 2024, the trial court left the evidentiary record open until April 22nd, during which time Father, again, did not submit any evidence. Father filed his motion to reopen the evidence, asserting 17 new categories of evidence, on May 31st—after the trial court entered its Judgment and Amended Judgment. Father's motion made no effort to explain why this evidence could not have been presented to the trial court during either of the previous

5

periods available. *See **Baker Team Props., LLC. v. Wenta***, 611 S.W.3d 348, 357 (Mo. App. W.D. 2020) ("Courts cannot reopen cases merely because a party has had a change of heart regarding the importance of evidence it chose not to introduce when it first had the opportunity to do so."). "Effectively, Father is 'dissatisfied with the original ruling and want[s] a second bite at the apple.'" ***Int. of S.R.W.***, No. ED 112622, 2025 WL 1689746, at *12 (Mo. App. E.D. June 17, 2025) (citing ***Dunn v. Hussman Corp.***, 892 S.W.2d 676, 680 (Mo. App. E.D. 1994)). Moreover, for the trial court to have reopened the evidence after entering its Amended Judgment would have not only inconvenienced the trial court, *see **Gardner***, 689 S.W.3d at 541, it would have been unfair to the Juvenile Office because it would have had to basically retry the case after having already timely prepared and presented its evidence, which Father failed to do. Nonetheless, Father's failure to timely file was fatal to his motion, and the trial court did not abuse its discretion in denying Father's motion to reopen the evidence. Point I is denied.

### Notice of the Social Study

In his second and third points, Father contends the trial court misapplied §211.455.3 because the CD failed to "make available to [Father]" the Social Study, and thus did not strictly comply with §211.455.3 (Point II), and this alleged lack of notice violated his due process rights under the United States and Missouri Constitutions (Point III).

"We presume that the judgment of the circuit court is correct, and we must affirm it unless the appellant demonstrates that the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." ***Int. of A.R.S.***, 689 S.W.3d 556, 557 (Mo. App. S.D. 2024) (internal citations omitted). "The circuit court must strictly and literally comply with the statutes governing the termination of parental rights." ***Id.*** "Failure to strictly comply with [§]211.455 is reversible error." ***Id.***

Section 211.455.3 states, in relevant part,

> The court shall order an investigation and social study . . . [which] shall be made by [the CD, as relevant here] . . . and a written report shall be made to the court to aid the court in determining whether [TPR] is in the best interests of the child . . . Parties **and** attorneys or guardians ad litem or volunteer advocates representing them before the court **shall have access** to the written report. All ordered evaluations and reports shall be made available to the parties **and** attorneys or guardians ad litem or volunteer advocates representing them before the court **at least fifteen days prior to any dispositional hearing**.

(emphasis added). Father argues a copy of the Social Study was never made available to him, let alone the statutorily-required fifteen days prior to the TPR hearing, and thus the trial court failed to strictly comply with §211.455.3.

Father acknowledges the CD: (1) served Father's trial counsel with a copy of the Social Study on November 14, 2023; (2) filed a copy of the Social Study with the trial court on January 21, 2024; and (3) filed a verification of service to Father's trial counsel on January 22nd. Father thus acknowledges that, at the very latest, a copy of the Social Study was made available to his trial counsel 60 days prior to the TPR hearing. Nevertheless, Father contends a copy of the Social Study was never made available to him.

However, Father waived appellate review of this issue because, when the Social Study was received into evidence at the TPR hearing, Father's trial counsel stated "[n]o objection," and Father otherwise never raised the issue prior to, or during, the trial. *See* Rule 78.09[3] (requiring a party to, "at the time the ruling or order of the court is made or sought, [make] known to the court the action that the party desires the court to take or objections to the action of the court and grounds therefor[e]."). While Father argues the issue was preserved for appellate review because he raised it in his post-trial motion, he is incorrect. *See **id.*** and ***Int. of S.C.A.***, 648 S.W.3d 911,

---

[3] Unless otherwise noted, all rule references are to Missouri Court Rules (2024).

913 (Mo. App. S.D. 2022) (holding that mother failed to preserve her §211.455.3 claim of error because, despite raising the issue in her post-trial motion, she failed to object at trial when the social study was received into evidence).

Because Father failed to preserve this issue for appellate review, it could only be reviewed for plain error. *See* Rule 84.13(c).[4] However, our *ex gratia* review does not reveal a manifest injustice has occurred because nothing in the record suggests noncompliance with §211.455.3. *See **Int. of K.G.K.**,* 709 S.W.3d 446, 451 (Mo. App. S.D. 2025) (holding, under similar facts and the same issue on appeal, there was no indication of noncompliance with §211.455.3 where the social study was completed and filed with the trial court, a certificate of service was filed with the trial court, and no objection was made when the social study was received into evidence). Points II and III are denied.

### TPR Findings

In determining whether to terminate parental rights based on abuse and neglect, the circuit court must consider and make findings on four factors. §211.447.5(2)(a)-(d). Those factors can be summarized as (a) a mental condition, (b) a chemical dependence, (c) a severe or recurrent act of abuse, and (d) repeated or continuous failure by the parent, although physically or financially able, to provide for the child. *See **id.*** While these four factors are simply categories of evidence to consider and not separate grounds for termination, the "proof of one such factor is sufficient to support termination on the statutory abuse or neglect ground." ***In re M.J.H.**,* 398 S.W.3d 550, 560 (Mo. App. S.D. 2013); *see also **In re K.N.D.**,* 649 S.W.3d 54, 61 (Mo. App. W.D. 2022).

---

[4] Rule 84.13(c): "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

Here, the trial court found there was evidence as to three of the §211.447.5(2)(a)-(d) factors authorizing TPR on the basis of abuse and neglect: (a) a mental condition, (c) severe or recurrent acts of abuse, and (d) repeated or continuous failures by Father to provide for Child. Father argues in his fourth point that these findings are against the weight of the evidence.

"[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *K.G.K.*, 709 S.W.3d at 453 (internal citations omitted). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.*

To succeed on an against-the-weight-of-the-evidence claim, Father must engage in the following four-step analysis:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id.*

Father contends the trial court's finding that he committed "severe or recurrent acts of abuse," §211.447.5(2)(c), was against the weight of the evidence. However, Father fails to "resolve all conflicts in testimony in accordance with the trial court's credibility determinations." *K.G.K.*, 709 S.W.3d at 453. Pointing to Child's medical records and the testimony of Dr. Miller,

9

Father requests us to reconsider the source of Child's injuries, stating, among other things, "Dr. Marvin Miller concluded in his report that it was highly unlikely that the fractures in [Child] were from child abuse, as [metabolic bone disorder] is a plausible medical explanation." However, we must defer to the trial court's determination that Dr. Miller's testimony was not credible. [5] Dr. Atzemis testified that Child did not suffer from metabolic bone disease and that Child's injuries were consistent with non-accidental "[i]nflicted trauma." Case Manager testified that Child did not suffer additional fractures when in the custody of the CD for 31 months, and that Father caused, or failed to protect Child from, Child's injuries. This evidence is sufficient to support the trial court's finding under §211.447.5(2)(c) that Father committed severe or recurrent acts of abuse toward Child. Because proof of one of the §211.447.5(2)(a)-(d) factors is sufficient to support a TPR based on abuse and neglect, *K.N.D.*, 649 S.W.3d at 61, we need not address the remainder of this point. Point IV is denied.

Similarly, our disposition of Point IV moots Point V, [6] in which Father, again, challenges the sufficiency of the evidence to support TPR on the basis of abuse and neglect, and Point VI, [7]

---

[5] While the Amended Judgment does not explicitly discuss its credibility determination as to Dr. Miller's testimony, the Amended Judgment speaks for itself. *H.S.H. ex rel. R.A.H. v. C.M.M.*, 60 S.W.3d 656, 660 (Mo. App. E.D. 2001) ("If [the trial court] does not make an explicit finding we will presume it made an implicit finding in accord with the result reached, if supported by substantial evidence.").

[6] Point V states,

> The trial court erred in finding pursuant to [§]211.447.5(2), that [Father] allegedly abused and neglected the minor child; because the CD's evidence that [Father] has a mental condition which cannot be properly treated and also the trial court's finding that [Father] committed severe or recurrent acts of abuse toward the minor child, was not supported by substantial evidence, in that the CD did not submit evidence of [Father]'s alleged sex offender evaluation at trial, the CD's witnesses admit that that they were unsuccessful in assisting [Father] in obtaining the sex offense specific treatment, and in that there is no proper reference to a "paragraph 6 above" as cited in paragraph 5(c) of the Amended Judgment, and therefore, the Judgment should be set aside as the Judgment finding of abuse and neglect was no [sic] supported by substantial evidence.

[7] Point VI states,

> The trial court erred in finding pursuant to both RSMo. 211.447.5(2), that [Father] allegedly abused and neglected the minor child; because the trial court's finding that [Father] failed to provide for the child's physical, mental or emotional health and development contains an erroneous application or

10

in which Father argues a misapplication of law regarding one of the other abuse and neglect factors under §211.447.5(2)(d).  Accordingly, Points V and VI are denied.

### Best Interest Findings

In his seventh point, Father contends the trial court abused its discretion in finding that TPR was in Child's best interest under §211.447.7.

"The determination of a child's best interest is a subjective assessment based on the totality of the circumstances."  *K.G.K.*, 709 S.W.3d at 453 (citing *Int. of Z.R.L.C.*, 700 S.W.3d 539, 543 (Mo. App. S.D. 2024)).  "We will reverse only if the trial court abused its discretion."  *Id.*  "An abuse of discretion occurs only when the trial court's ruling is 'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.'"  *Gardner*, 689 S.W.3d at 539.

When making a TPR determination, a trial court is required to evaluate and make findings on seven factors.  *See* §211.447.7(1)-(7).[8]  "There is no requirement that all seven

---

declaration of the law with regards to the use of [§]211.447.5(2)(d), in that the trial court appears to apply facts and law regarding a physical injury to the minor child rather than the correct standard which should be applied to a [§]211.447.5(2)(d) analysis; and, therefore, the Amended Judgment should be set aside as the Amended Judgment finding of abuse and neglect pursuant to [§]211.447.5(2)(d) erroneously applied or declared the law.

[8] §211.447.7 states, in relevant part: "When considering whether to terminate the parent-child relationship . . . the court shall evaluate and make findings on the following factors . . . :"

 (1)  The emotional ties to the birth parent;

 (2)  The extent to which the parent has maintained regular visitation or other contact with the child;

 (3)  The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

 (4)  Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

 (5)  The parent's disinterest in or lack of commitment to the child;

factors must be found adversely to the parent for termination to be in the child's best interest and, likewise, there is no minimum number of negative factors required for termination." ***Z.R.L.C.***, 700 S.W.3d at 544 (quoting ***In re Z.L.R.***, 347 S.W.3d 601, 610 (Mo. App. S.D. 2011)).

Here, the trial court made findings on all seven factors, weighing five in favor of termination: (1) that Child does not have an emotional tie to Father; (2) that, under his bond conditions, Father is not allowed contact with Child; (3) that additional services would likely not result in parental adjustment enabling Child's return to Father in an ascertainable period of time; and (4) that evidence supports that Father's deliberate acts subjected Child to substantial risk of injury and caused said injuries.

Considering the evidence as discussed above, and deferring to the trial court's superior position to judge the credibility of witnesses, we find there is sufficient evidence to support the trial court's findings and are unpersuaded such findings are "so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." ***Gardner,*** 689 S.W.3d at 541. Point VII is denied.[9]

---

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

[9] Father also argues the trial court improperly considered his incarceration for the underlying charged crimes because he had not been convicted. *See* §211.447.7(6) (felony conviction as a "best interest" factor). However, the Amended Judgment states "[t]here is evidence to support a finding that [F]ather is not convicted of a felony offense that would be of a nature that the child would be deprived of a stable home for a period of years[.]" While the Amended Judgment goes on to discuss the pending charges against Father, it does not state that it is weighing the factor against Father. The mere discussion of Father's potential incarceration does not constitute an abuse of discretion. *See In re K.M.W.*, 342 S.W.3d 353, 363 (Mo. App. S.D. 2011) ("While [f]ather is absolutely correct that incarceration alone is not sufficient to terminate parental rights, this does not mean that incarceration may not be considered at all; in many cases, it is an extremely important factor.").

**Conclusion**

The Amended Judgment of the trial court is affirmed.

MATTHEW P. HAMNER, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS